1 | Daniel R. Tamez, Esq. State Bar No. 216619
GNAU & TAMEZ LAW GROUP
2 | danieltamez@sdinjuryattorney.com
1010 Second Avenue. Suite 1750
3 | San Diego. California 92101
Telephone: (619) 446·6736
4 | Facsimile: (619) 793-5215

5 | Majed Nachawati (not admitted)
Texas State Bar No. 24038319
6 | mn@fnlawfirm.com
FEARS | NACHAWATI LAW FIRM
7 | 4925 Greenville Ave, Suite 715
Dallas. Texas 75206
8 | Telephone: (214) 890-0711
Facsimile: (214) 890-0712
9
**ATTORNEYS FOR PLAINTIFFS**
10 | **(pro hac vice application pending)**

11 | IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION
12

13

14 | PAMELA RUTLEDGE-MUHS and JAY
WOOLWINE. on behalf of themselves and all others
15 | similarly situated,
Plaintiffs,
16 |
v.
17 |
DREYER'S GRAND ICE CREAM, INC.,
18 | Defendants.

Cause No. **3164**

Judge: _____

**ORIGINAL CLASS ACTION
COMPLAINT FOR
DAMAGES, EQUITABLE,
DECLARATORY AND
INJUNCTIVE RELIEF**

DEMAND FOR JURY TRIAL

19

20

21 | TO THE HONORABLE UNITES STATES DISTRICT COURT:
22
Plaintiffs. by their attorneys, brings this class action against Defendant Dreyer's Grand Ice
23
24 | Cream. Inc. ("Dreyer's") or ("Defendant"), on their behalf and on behalf of all others similarly
25 | situated. Plaintiffs allege the following upon personal knowledge as to themselves and their own
26 | acts, and as to all other matters, upon information and belief, based upon the investigation made by
27 | and through their attorneys:
28

## I. NATURE OF ACTION

1.     This is a class action on behalf of a nationwide class of consumers who purchased Dreyer's Grand Ice Cream, Inc.'s purported "All Natural" Ice Cream Products[1] containing alkalized cocoa processed with potassium carbonate beginning June 25, 2007 through the present ("Class Period"). Since at least 2007, Dreyer's has packaged, marketed and sold its ice cream products as being "All Natural" despite the fact that the products contain alkalized cocoa processed with a non-natural, man-made, synthetic ingredient—potassium carbonate.

2.     Throughout the Class Period, Dreyer's made and continues to make the claim "All Natural" on the labels of its Ice Cream Products, in an effort to promote the sale of its Ice Cream Products, even though its Ice Cream Products are actually not "All Natural." While the "All Natural" Ice Cream Products' labels did disclose they contained alkalized cocoa, the labels did not disclose to consumers that the alkalized cocoa was processed with potassium carbonate. This is a significant omission because alkalized cocoa can also be processed with a natural ingredient, such as sodium carbonate.

3.     In light of the "All Natural" misrepresentation on the products' labels, and the availability of natural processing ingredients for alkalized cocoa, a reasonably prudent consumer would certainly not normally expect the alkalized cocoa in Dreyer's Ice Cream Products to be processed with a man-made, synthetic ingredient, like potassium carbonate. As a result of this false and misleading labeling and marketing, Dreyer's was able to sell these purportedly "All Natural" Ice Cream Products to thousands of unsuspecting consumers in California and throughout the United States and profited from these transactions. Plaintiffs allege Dreyer's conduct gives rise to

---

[1] The term "Ice Cream Products" shall mean and include Dreyer's "All Natural" premium ice creams, yogurts, and sorbets.

common law fraud, violates the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), violates the California Business & Professions Code § 17500, *et seq.*, and violates the Consumers Legal Remedies Act (California Civil Code § 1750. *et seq.*). Plaintiffs also allege that Dreyer's conduct is grounds for restitution on the basis of quasi-contract / unjust enrichment.

4.    Dreyer's has its principal place of business in Oakland. California and, upon information and belief, operates, manages, and directs its nationwide sales business operations from its offices in California. Therefore, upon information and belief, the misleading labeling and related marketing misconduct and representations at issue in this Original Complaint occurred, were conducted, and/or were directed substantially from Defendant's headquarters in California.

5.    Plaintiffs also seek injunctive and declaratory relief based upon Dreyer's conduct asserted in this Original Complaint. As of the date of this Original Complaint, retail stores in the United States and California are selling Dreyer's Ice Cream Products labeled as "All Natural," even though they contain alkalized cocoa processed with potassium carbonate, a man-made, synthetic ingredient. Accordingly, Plaintiffs seek declaratory and injunctive relief to ensure Dreyer's removes any and all of the "All Natural" representations from the labels and packaging of its Ice Cream Products available for purchase, and to prevent Dreyer's from making the "All Natural" representation on its Ice Cream Products' labels in the future, as long as the Ice Cream Products continue to use alkalized cocoa processed with a synthetic, unnatural substance.

## A.    **PARTIES**

6.    Plaintiff Pamela Rutledge-Muhs is an individual residing in San Bernardino County, California.

7.    Plaintiff Jay Woolwine is an individual residing in San Bernardino County,

California.

8. Defendant Dreyer's Grand Ice Cream, Inc., is incorporated in Delaware and has its principle place of business and headquarters at 5929 College Avenue, Oakland, California 94618. Upon information and belief, Defendant made its marketing decisions, including the decisions regarding marketing its Ice Cream Products, from its corporate headquarters in Oakland, California. Dreyer's claims to produce a variety of premium ice cream products made with all natural ingredients and all natural flavors. Dreyer's currently manufactures and distributes premium products under the Dreyer's brand name in the Western United States and Texas and under the EDY'S® brand name east of the Rocky Mountains. Dreyer's also produces and distributes the super-premium line of Haagen-Daz products in the United States. Dreyer's products are sold and distributed nationwide in grocery stores, convenience stores, restaurants, hotels and other retail locations.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). One or more members of the putative class of plaintiffs are citizens of States different from Defendant. Upon information and belief, the total number of members of the proposed Class is greater than 100 and the matter in controversy exceeds the aggregate sum of $5,000,000, exclusive of interest and costs. Accordingly, diversity of citizenship exists under the Class Action Fairness Act, as required by 28 U.S.C. § 1332(d)(2)(A).

10. Upon information and belief, based upon Defendant's sales of its products through thousands of retail stores nationwide, more than two thirds of all Class members of the proposed Class are citizens of a State other than California.

11. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391. Defendant resides in this judicial district. Upon information and belief, a substantial part of the events or

omissions giving rise to the claims alleged herein occurred in this judicial district. Defendant is subject to personal jurisdiction and/or may be found in this judicial district.

12. The Declaration of Daniel R. Tamez, made pursuant to California Civil Code § 1780(d) regarding venue under the California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*), is attached hereto.

## B. FACTUAL ALLEGATIONS

13. The cocoa bean is a seed that grows on trees native to South America. The fermented and dried cocoa seed is the basic ingredient in chocolate. Chocolate is a name given to products that are derived from cocoa which are then mixed with some sort of fat and finely powdered sugar to produce a solid edible product.

14. To make chocolate, cocoa beans are processed, roasted, cracked and shelled. The resulting pieces are further processed into a chocolate liquor, butter or powder. The cocoa powder is typically used in the flavoring of ice creams.

15. Unsweetened baking cocoa powder is typically rendered in one of two forms: an un-alkalized cocoa or a version known as Dutch-process/alkalized cocoa. Both are made by pulverizing partially defatted chocolate liquor and removing nearly all the cocoa butter. Un-alkalized cocoa is light in color and somewhat acidic with a strong chocolate flavor. Dutch-process cocoa is processed with alkali to neutralize its acidity. Dutch cocoa is slightly milder in taste, with a deeper and warmer color than un-alkalized cocoa. Dutch-process cocoa is frequently used when the product calls for the blending of cacao with liquids. Dutch processing destroys most of the flavonols present in un-alkalized cocoa—the water-soluble plant pigments that are believed to give dark chocolate health benefits in the form of antioxidant, anti-inflammatory and antiviral properties.

16. Cocoa is typically either un-alkalized, or alkalized. In order for cocoa to be used in

its alkalized form, a Dutching or alkalization takes place during the processing of the cocoa beans. During this process an alkali—usually either potassium carbonate or sodium carbonate[2]—is suspended in water to neutralize acids and alter the pH level of the beans. The alkalizing agent darkens the cocoa, makes it milder in flavor, and increases its dispersability.

17. Dreyer's Ice Cream Products containing alkalized cocoa are processed with potassium carbonate. Potassium carbonate is a recognized synthetic substance. Significantly, the other commonly used alkali in making alkalized cocoa—sodium carbonate—is a recognized non-synthetic, natural substance. However, Dreyer's Ice Cream Products did not disclose that the alkalized cocoa it used was processed with potassium carbonate, the synthetic substance, despite the "All Natural" representation on its Ice Cream Products' labels.

18. Product package labels convey nutrition information to consumers that consumers can and do use to make purchasing decisions.

19. The alkalized cocoa in Dreyer's Ice Cream Products was processed with potassium carbonate—a synthetic substance. While Dreyer's "All Natural" Ice Cream Products' labels did disclose that they contain alkalized cocoa, those labels did not disclose that the alkalized cocoa was processed with potassium carbonate. This omission is significant and material given the "All Natural" representation on the Ice Cream Products' labels. Indeed, based on the "All Natural" representation, one would normally expect the alkalized cocoa contained in the Ice Cream Products

---

2 Besides the commonly used potassium carbonate and sodium carbonate, there are other less commonly used alkali substances that are used in processing cocoa not listed herein. Significantly, sodium carbonate and sodium bicarbonate appear to be the only safe and suitable non-synthetic alkali substances. To the extent Dreyer's may claim some of its Ice Cream Products may have to some degree used alkalized cocoa processed with one or more of these less commonly used alkali substances, it is believed and therefore averred by Plaintiffs that the Dreyer's Ice Cream Products did not contain alkalized cocoa processed with one of the non-synthetic alkali substances, and instead contained alkalized cocoa processed with one of the synthetic alkali substances.

1  to be processed with the commonly used non-synthetic, natural alternative. like sodium carbonate.

2      20.    According to Dreyer's Ice Cream Products' labels. cocoa processed with alkali is

3  used as an ingredient in over 80 of Dreyer's Ice Cream Products which otherwise claim to be "All

4  Natural" or to contain all natural flavors. These products include:

5

6          **a.    Haagen-Daz "All-Natural" Flavors—Ice Cream**

7  Banana Split
Caramel Cone Chocolate
8  Chocolate "Five"
Chocolate Chip Cookie Dough
9  Chocolate Chocolate Chip
Chocolate Peanut Butter Cookies & Cream
10  Dark Chocolate
Java Chip Mint Chip
11  Rocky Road
12  White Chocolate Raspberry Truffle

13          **b.    Haagen-Daz "All Natural" Frozen Yogurts**

14  Chocolate Almond

15          **c.    Haagen-Daz "All Natural" Lowfat Sorbet**

16  Chocolate
17

18          **d.    Haagen-Daz "All Natural" Ice Cream Bars**

19  Chocolate & Dark Chocolate

20          **e.    Dreyer's and Edy's "All Natural" Slow Churned[R] Light Ice Cream**

21  Chocolate Chocolate Chip Cookie Dough
22  Cookies 'n Cream Double Fudge Brownie French Silk
Fudge Tracks
23  Mint Chocolate Chip Mint Cookie Crunch
Mocha Almond Fudge
24  Mud Pie
Neapolitan
25  Nestle Drumstick Sundae Cone
Peanut Butter Cup
26  Rocky Road Triple Chocolate Peanut Butter Sundae
27  Triple Cookie Fudge Sundae

28

**f.**   **Dreyer's and Edy's "All Natural" Slow Churmed<sup>®</sup> No Sugar Ice Cream**

Fudge Tracks
Mint Chocolate Chip
Neapolitan
Triple Chocolate

**g.**   **Dreyer's and Edy's "All Natural" Slow Churned<sup>®</sup> Yogurt Blends**

Cappuccino Chip
Chocolate Fudge Brownie
Chocolate Vanilla Swirl
Cookies 'n Cream

**h.**   **Dreyer's and Edy's "All Natural" Grand Ice Cream**

Chocolate
Chocolate Chip
Mint Chocolate Chip
Neapolitan
Rocky Road
Vanilla Chocolate

**i.**   **Dreyer's and Edy's "All Natural" Fun Flavors Ice Cream**

Mocha Almond Fudge Nestle Drumstick
Peanut Butter Cup
Chocolate Peanut Butter Cup

21.     Plaintiffs reserve the right to edit this list as discovery progresses.

22.     The labeling of products as "All Natural" carries implicit health benefits important to consumers—benefits that consumers are often willing to pay a premium over comparable products that are not "All Natural."

23.     Dreyer's has used the "All Natural" label to shape its brand and sell its products. Yet, the existence of alkalized cocoa processed with potassium carbonate in its Ice Cream Products renders the use of the label "All Natural" false and misleading. In manufacturing its Ice Cream Products. Dreyer's had a choice between using natural or unnatural alkali processed cocoa. It chose the latter, but nonetheless labeled its Ice Cream Products as "All Natural."

**PLAINTIFFS' PURCHASES**

24. Plaintiffs are willing to and have paid a premium for foods that are all natural.

25. For approximately the past five years. Plaintiff Rutledge-Murs purchased. on average. one pint-sized container of Dreyer's Mint Chocolate Chip flavored ice cream about every other month at the Stater Bros. Markets store located in San Bernardino, California.

26. For approximately the past two years, Plaintiff Woolwinc purchased. on average. two pint-sized containers of Dreyer's Chocolate Peanut Butter Cup flavored ice cream about every month at Vons and Stater Bros. Markets stores located in Big Bear City and Big Bear Lake. California.

27. Based on the "All Natural" representation on the Dreyer's Ice Cream Products' labels, Plaintiffs believed the Dreyer's Ice Cream Products they purchased were all natural and relied on this representation in making their purchases.

28. Instead. upon information and belief, the Dreyer's Ice Cream Products that Plaintiffs purchased contained alkalized cocoa processed with potassium carbonate—a synthetic ingredient. While touting the product as "All Natural," the Ice Cream Products' labels Plaintiffs relied on. neither disclosed that the alkalized cocoa used in the Ice Cream Products was processed with potassium carbonate, a synthetic ingredient, nor otherwise disclosed that a synthetic ingredient was used in the Dreyer's Ice Cream Products.

29. Plaintiffs not only purchased the Dreyer's Ice Cream Products because the labels said they were "All Natural," but also, Plaintiffs paid more money for the products than they would have paid for other similar ice cream or frozen yogurt products that were not all natural. Had Plaintiffs known the truth that the Dreyer's Ice Cream Products were not all natural (as represented by Defendant). they would not have purchased the Dreyer's Ice Cream Products. but would have

purchased another brand of ice cream or frozen yogurt that was truly all natural or. if one was not available. would have purchased another non-natural ice cream or frozen yogurt product that was less expensive than Dreyer's Ice Cream Products.

30. Plaintiffs did not receive the "All Natural" Ice Cream Products they bargained for when they purchased the Dreyer's "All Natural" Ice Cream Products. and have lost money as a result in the form of paying a premium price for Dreyer's Ice Cream Products because they were purportedly all natural, rather than paying a lesser amount for non-natural alternative ice cream products.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1). 23(b)(2) and 23(b)(3), on behalf of themselves and all other members of the Class ("Class"), defined as:

All persons in the United States who purchased Dreyer's Ice Cream Products that were labeled "All Natural" but also contained alkalized cocoa processed with a synthetic ingredient during the Class Period.

32. Excluded from the Class are: (i) all persons who purchased Dreyer's Ice Cream Products for resale; (ii) Defendant, its parent companies, principals. legal representatives. subsidiaries and affiliates. and any co-conspirators. (iii) all governmental entities, (iv) and any judges or justices assigned to hear any aspect of this action.

33. Plaintiffs reserve the right to amend the class definition prior to class certification.

34. Upon information and belief, there are tens of thousands of Class members who are geographically dispersed throughout the United States. Therefore, individual joinder of all members of the Class would be impracticable.

35. Common questions of law or fact exist as to all members of the Class. These

questions predominate over the questions affecting only individual class members. These common legal or factual questions include, but are not limited to:

     a.   whether Dreyer's labels its Ice Cream products as "All Natural:"

     b.   whether the alkalized cocoa used in Dreyer's Ice Cream Products is processed with a synthetic ingredient;

     c.   whether Dreyer's "All Natural" labeling of its Ice Cream Products is false and misleading and likely to deceive class members and/or the general public:

     d.   whether Dreyer's conduct is unlawful;

     e.   whether Dreyer's conduct is fraudulent;

     f.   whether Dreyer's conduct violates the California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*);

     g.   whether Dreyer's conduct violates California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

     h.   whether Dreyer's conduct violates the California Business & Professions Code § 17500, *et seq.*; and

     i.   the appropriate measure of damages, restitutionary disgorgement and/or restitution.

36.   Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were consumers who purchased Dreyer's "All Natural" Ice Cream Products in the United States that contained alkalized cocoa processed with a synthetic ingredient during the Class Period. Plaintiffs, therefore, are no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

37.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

38. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member likely will be relatively small. especially given the relatively small cost of the Ice Cream Products at issue and the burden and expense of individual prosecution of these claims. Thus. it would be virtually impossible for the Class members. individually. to effectively redress the wrongs done to them. Moreover. even if the Class members could afford individual actions. it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast. a class action presents far fewer management difficulties and provides the benefits of single adjudication. economies of scale. and comprehensive supervision by a single court.

39. In the alternative. the Class may be certified because Dreyer's has acted or refused to act on grounds generally applicable to the Class, thereby making preliminary and final equitable relief with respect to the Class appropriate.

## FIRST CAUSE OF ACTION
### (Common Law Fraud)

40. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if fully set forth herein verbatim.

41. During the Class Period. Dreyer's product labels for its Ice Cream Products uniformly misrepresented that its Ice Cream Products were "All Natural." when in fact they contain alkalized cocoa powder processed with potassium carbonate. a synthetic ingredient. While Dreyer's labels did disclose during the Class Period that its "All Natural" Ice Cream Products contained alkalized cocoa powder. it uniformly *did not* disclose during the Class Period that the alkalized cocoa powder used contained the synthetic. potassium carbonate. Thus. the disclosure on its labels that the Ice Cream Products contained alkalized cocoa powder constitutes an affirmative act of concealment

and non-disclosure since cocoa powder may be alkalized with natural ingredients such as sodium carbonate, and the information about whether Defendant's cocoa powder was alkalized with the synthetic potassium carbonate was known only by Defendant. Defendant had a duty to disclose this material information in light of its representation on its labels that its Ice Cream Products were "All Natural."

42.     Defendant's "All Natural" statements and representations and its affirmative concealments and omissions described herein were material in that there was a substantial likelihood that a reasonable prospective purchaser of its Ice Cream Products would have considered this information important when deciding whether or not to purchase the Ice Cream Products.

43.     Defendant knew or recklessly disregarded that its Ice Cream Products were not "All Natural," and uniformly misrepresented its Ice Cream Products as "All Natural" and affirmatively concealed and omitted the truth with the intent and purpose of inducing consumers *(i.e.,* Plaintiffs and the Class) to purchase its Ice Cream Products.

44.     Defendant failed to disclose, misrepresented and/or concealed the foregoing material facts from Plaintiffs and the Class knowing that these facts may have justifiably induced them to refrain from purchasing Defendant's Ice Cream Products and instead purchase another manufacturer's ice cream, frozen yogurt or sorbet that was actually all natural, or to purchase a less expensive non-natural substitute ice cream, frozen yogurt or sorbet product.

45.     As set forth in paragraphs 24-30 (and others) of this Complaint, Plaintiffs relied on Defendant's "All Natural" representations on its Ice Cream Products' labels as a material basis for their decisions to purchase Defendant's Ice Cream Products. Moreover, based on the very materiality of Defendant's misrepresentations, concealments and omissions uniformly made on (or omitted from) its Ice Cream Products' labels, Class members' reliance on those misrepresentations,

concealments and omissions as a material basis for their decision to purchase Defendant's Ice Cream Products may be presumed or inferred for all Class members.

46.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly and with reckless disregard for the interests of Plaintiffs and the Class.

47.    By reason of the foregoing, Plaintiffs and members of the Class have been injured by purchasing Dreyer's Ice Cream Products represented to be "All Natural," which they were not, and/or by paying a premium for purportedly "All Natural" Ice Cream Products over less expensive non-natural alternatives. Plaintiffs and the members of the Class are therefore entitled to recover damages, punitive damages, equitable relief, such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
### False Advertising in Violation of
### Cal. Bus. & Prof. Code §§17500, *et seq.*

48.    Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if fully set forth herein verbatim.

49.    This cause of action is brought by Plaintiffs on behalf of themselves, the Class members, and the general public.

50.    Defendant has engaged in false advertising on its packaging to sell its Ice Cream Products, as set forth herein. Defendant is disseminating advertising concerning its goods which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code § 17500, *et seq.* because those advertising statements contained on its Ice Cream Products labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

51.    In making and disseminating the statements alleged herein, Defendant knew or should have known, by exercising reasonable care, that the statements were untrue and/or misleading.

52.     The misrepresentations and non-disclosures by Defendant of the material facts detailed herein constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code § 17500, *et seq.*

53.     As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has improperly and illegally obtained received ill-gotten gains and/or profits, including but not limited to, money. Therefore, Defendant has been unjustly enriched.

54.     Pursuant to California Business & Professions Code § 17535, Plaintiffs request injunctive relief, restitution and restitutionary disgorgement of Defendant's ill-gotten gains and money and/or for all sums obtained in violation of California Business & Professions Code § 17500, *et seq.*(by means of such false advertising), as well as interest and attorneys fees, to Plaintiffs and the members of the Class, so as to restore any and all monies which were acquired or obtained by means of such untrue and misleading advertising, misrepresentations, and/or omissions.

55.     Such conduct is ongoing and continues to this date. Plaintiffs and the Class seek to enjoin Defendant from engaging in these wrongful practices, as alleged herein, in the future. There is no adequate remedy at law and if an injunction is not ordered, Plaintiffs and the Class will suffer irreparable harm and/or injury and continue to be harmed by Defendant's false and/or misleading advertising.

56.     Pursuant to California Business & Professions Code § 17535, Plaintiffs seek an order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations.

## THIRD CAUSE OF ACTION
### Violation of
### The Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*

57.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if fully set forth herein verbatim.

58. The Unfair Competition Law ("UCL"), California Business & Professions Code, § 17200, defines unfair competition to include any "unlawful, unfair or fraudulent" business act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

59. A business act or practice is "unlawful" if it violates any established state or federal law.

60. California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Article 6, §110660 provides that: "Any food is misbranded if its labeling is false or misleading in any particular."

61. Dreyer's has violated, and continues to violate the Sherman Law, Article 6, § 110660 and hence has also violated and continues to violate the "unlawful" prong of the UCL through its use of the term "All Natural" on the labels of its Ice Cream Products that contained alkalized cocoa processed with an unnatural, synthetic ingredient. This conduct also serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate federal policy concerning what is "natural."

62. Defendant is also engaging in unlawful conduct by, including but not limited to, failing to comply with the Consumers Legal Remedies Act.

63. By committing the acts and practices set forth above, Dreyer's has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code § 17200 *et seq.*

64. Furthermore, Defendant's conduct, as set forth herein, also constitutes "unfair" business practices within the meaning of the UCL insofar as Defendant's business practices alleged herein are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to

1  consumers.

2     65.    A business act or practice is "unfair" if the reasons, justifications, and motives of the

3  alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

4

5     66.    Dreyer's has, and continues to violate the "unfair" prong of the UCL through its

6  misleading description of its products as "All Natural" when indeed a main ingredient is not natural

7  and is being processed with a synthetic substance. The harm to Plaintiffs and members of the Class

8  resulting from such unfair acts and/or practices outweighs any of Dreyer's reasons, justifications

9  and/or motives for engaging in such deceptive acts and/or practices.

10    67.    By committing the acts and/or practices set forth herein, Dreyer's has engaged, and

11 continues to engage, in unfair business practices within the meaning of the California Business &

12 Professions Code 17200, *et seq.*

13

14    68.    Finally, Defendant's conduct, as set forth herein, also constitutes "fraudulent"

15 business practices within the meaning of the UCL insofar as Defendant's business acts and/or

16 practices of mislabeling their products as "All Natural" (despite the fact they contained alkalized

17 cocoas processed with a non-natural, synthetic substance) actually deceives and/or is likely to

18 deceive members of the public and has the effect of misleading consumers into believing the

19 product is something that it is not.

20

21    69.    A business act or practice is "fraudulent" under the UCL if it actually deceives or is

22 likely to deceive members of the consuming public.

23    70.    These above-described unlawful, unfair, and fraudulent practices and false and

24 misleading advertising by Defendant presents an ongoing threat to Plaintiffs and the Class.

25    71.    As a direct and proximate result of Defendant's violations of the Unfair Competition

26 Law, Plaintiffs and the Class members have suffered harm in that they reasonably relied on

27

28

Original Class Action Complaint
17

Defendant's misrepresentations and were induced to purchase certain of Defendant's Ice Cream Products.

72.     As a direct and proximate result of Defendant's violations of California Business & Professions Code §17200, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the members of the Class by the profits it has obtained from Plaintiff and the other members of the Class from their purchases of Ice Cream Products. Defendant has unfairly and improperly obtained (and continues to obtain) money from Plaintiffs and members of the Class. As such, Defendant should be required to make restitution to Plaintiffs and the members of the Class or make restitutionary disgorgement of its ill-gotten profits, pursuant to California Business & Professions Code § 17203.

73.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for injunctive relief and/or restitutionary disgorgement, and an award of attorneys' fees.

74.     Plaintiffs and the members of the Class seek to enjoin Defendant from currently engaging in these wrongful practices, as set forth herein, and to enjoin Defendant from engaging in these wrongful practices in the future. There is no other adequate remedy at law and if an injunction is not ordered, Plaintiffs and the members of the Class will suffer irreparable harm and/or injury.

## FOURTH CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act,
### California Civil Code § 1750, *et seq.*

75. .   Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if fully set forth herein verbatim.

76.     This cause of action is brought pursuant to the Consumers Legal Remedies Act,

California Civil Code § 1750. *et seq.* (the "CLRA").

77. Plaintiffs and each member of the proposed Class are "consumers" within the meaning of California Civil Code § 1761(d).

78. The purchases of Dreyer's products by consumers constitute "transactions" within the meaning of California Civil Code § 1761(e) and the Ice Cream Products offered by Dreyer's constitute "goods" within the meaning of California Civil Code § 1761(a).

79. Dreyer's has engaged and continues to engage in practices in violation of the CLRA by making false representations, in at least the following respects:

    a.    Dreyer's represents that the goods had characteristics which it did not have, in violation of California Civil Code § 1770(a)(5);

    b.    Dreyer's represents that its goods were of a particular standard, quality or grade, which they were not, in violation of California Civil Code § 1770(a)(7); and

    c.    Dreyer's advertised its goods with the intent not to provide what it advertised, in violation of California Civil Code § 1770(a)(9).

80. Defendant has engaged in deceptive acts and/or practices intended to result in purchases of certain of its Ice Cream Products in violation of the CLRA. Defendant knew and/or should have known that its representations, as set forth herein, were material and likely to mislead the public.

81. As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has received ill-gotten gains and/or profits including, but not limited to, money. Therefore, Defendant has been unjustly enriched.

82. There is no other adequate remedy at law, and Plaintiffs and the Class will suffer irreparable harm unless Defendant's conduct is enjoined. As such, Plaintiffs and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and

deceptive methods. acts and/or practices alleged above. Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA. future consumers of Dreyer's Ice Cream Products will be damaged by its acts and/or practices in the same way Plaintiffs and the members of the proposed Class have been damaged.

83. Pursuant to California Civil Code § 1780(a)(2). (3). and (5). Plaintiffs and the members of the Class seek an order for: (1) an injunction against Defendant's illegal conduct as alleged herein: (2) restitution; (3) ancillary relief; and (4) attorneys' fees and costs to the full extent allowed by law.

84. Pursuant to Civil Code § 1782(d). and in conjunction with the filing of this action, counsel for Plaintiffs and the Class provided Defendant with written notice that its conduct is in violation of the CLRA. Plaintiffs and the Class will amend their Complaint within thirty (30) days of having provided this notice to seek damages under the CLRA.

## FIFTH CAUSE OF ACTION
### Restitution Based On Quasi-Contract/Unjust Enrichment

85. Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint and restate them as if fully set forth herein verbatim. Plaintiffs plead this Count in the alternative.

86. Dreyer's conduct in enticing Plaintiffs and the Class to purchase its Ice Cream Products through its false and misleading packaging as described throughout this Complaint is unlawful because the statements contained on its product labels are untrue. Dreyer's took monies from Plaintiffs and the members of the Class for a product promised to be "All Natural." even though the product it sold is not all natural as specified throughout this Original Complaint. Dreyer's has been unjustly enriched at the expense of Plaintiffs and Class members as a result of its unlawful conduct as alleged herein. thereby creating a quasi-contractual obligation on Dreyer's to restore these ill-gotten gains to Plaintiffs and the Class.

87. As a direct and proximate result of Dreyer's unjust enrichment. Plaintiffs and the Class members are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER

WHEREFORE. Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, pray for relief and judgment against Defendant, as follows:

A. An order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

B. Restitution to Plaintiffs and the Class of all monies wrongfully obtained by Defendant;

C. Compensatory damages suffered by Plaintiffs and the Class;

D. Preliminary and injunctive relief enjoining Defendant from advertising its products misleadingly, in violation of California's Sherman Food. Drug and Cosmetic Law and other applicable laws and regulations as stated herein;

E. An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees. and pre and post-judgment interest;

F. An order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein; and

G. Such other and further relief as may be deemed just and proper.

## INTRADISTRICT ASSIGNMENT

Pursuant to Civil L.R. 3-2(c) and 3-5(b), Plaintiffs and the members of the Class believe this is a related case to Cause Number C11-02910 EDL, assigned to the Honorable Elizabeth D. Laporte.

1  | pending in the United States District Court for the Northern District of California, Oakland Division.

2  | **DEMAND FOR JURY TRIAL**

3  | Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs, on behalf of themselves and all

4  |
5  | others similarly situated, demand a trial by jury of any and all issues in this action so triable.

6  | DATED: June 24, 2011

7  | By:____ /s/ Daniel R. Tamez
8  | Daniel R. Tamez, Esq. (Bar No. 216619)
   | GNAU & TAMEZ LAW GROUP, LLP
9  | 1010 Second Avenue, Suite 1750
   | San Diego, CA 92101
10 | danieltamez@sdinjuryattorney.com
11 | Tel: 619-446-6736
   | Fax: 619-793-5215

12 |
   | Attorney for Plaintiffs and the Class
13 |

14 |

15 | FEARS | NACHAWATI LAW FIRM, P.L.L.C.
   | Majed Nachawati
16 | SBN 24038319
   | mn@fnlawfirm.com
17 | Bryan Fears
   | SBN 24040886
18 | fears@fnlawfirm.com
   | Fears I Nachawati Law Finn
19 | 4925 Greenville Ave, Suite 715
20 | Dallas, Texas 75206
   | Telephone: (214) 890-0711
21 | Facsimile: (214) 890-0712

22 |
   | (*pro hac vice* application to be filed)
23 |

24 | **ATTORNEYS FOR PLAINTIFFS**

25 |

26 |

27 |

28 |

1 | Daniel R. Tamez, Esq. State Bar No. 216619
GNAU & TAMEZ LAW GROUP
2 | danieltamez@sdinjuryattorney.com
1010 Second Avenue, Suite 1750
3 | San Diego. California 92101
Telephone: (619) 446·6736
4 | Facsimile: (619) 793-5215

5 | Majed Nachawati (not admitted)
Texas State Bar No. 24038319
6 | mn@fnlawfirm.com
FEARS | NACHAWATI LAW FIRM
7 | 4925 Greenville Ave. Suite 715
Dallas. Texas 75206
8 | Telephone: (214) 890-0711
Facsimile: (214) 890-0712
9

**ATTORNEYS FOR PLAINTIFFS**
10 | **(pro hac vice application pending)**

11 | IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION
12

13 | PAMELA RUTLEDGE-MUHS and JAY
WOOLWINE. individually and on behalf of all others
14 | similarly situated.

15 | Plaintiffs, | **DECLARATION OF DANIEL R. TAMEZ PURSUANT TO CALIFORNIA CIVIL CODE §1780(d)**
16 | v.
17
DREYER'S GRAND ICE CREAM, INC.,
18
Defendant.
19

20

21 | Daniel R. Tamez Declares:
22

23 | 1. I am an attorney duly admitted to practice before this Court. I am a partner in the

24 | firm of Gnau & Tamez Law Group, attorneys of record for Plaintiffs Pamela Rutledge-Muhs and

25 | Jay Woolwine.

26 | 2. This action has been filed in a county described in California Civil Code § 1780(d) as

27 | a proper place for the commencement of this action.

28

DECLARATION OF DANIEL R. TAMEZ

3. Defendant Dreyer's Grand Ice Cream, Inc. resides in, has its principal place of business in, and/or is doing business in Alameda County, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2011, at $\underline{San\ Diego,\ CA}$.

Daniel R. Tamez, Esq. (Bar No. 216619)
GNAU & TAMEZ LAW GROUP, LLP
1010 Second Avenue, Suite 1750
San Diego, CA 92101
danieltamez@sdinjuryattorney.com
Tel: 619-446-6736
Fax: 619-793-5215

Attorney for Plaintiffs and the Class

1 | Daniel R. Tamez, Esq. State Bar No. 216619
GNAU & TAMEZ LAW GROUP
2 | danieltamez@sdinjuryattorney.com
1010 Second Avenue, Suite 1750
3 | San Diego, California 92101
Telephone: (619) 446·6736
4 | Facsimile: (619) 793-5215

5 | Majed Nachawati (not admitted)
Texas State Bar No. 24038319
6 | mn@fnlawfirm.com
FEARS | NACHAWATI LAW FIRM
7 | 4925 Greenville Ave, Suite 715
Dallas, Texas 75206
8 | Telephone: (214) 890-0711
Facsimile: (214) 890-0712
9
**ATTORNEYS FOR PLAINTIFFS**
10 | **(pro hac vice application pending)**

11 | IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION
12

13 | PAMELA RUTLEDGE-MUHS and JAY
WOOLWINE, individually and on behalf of all others
14 | similarly situated,

**PLAINTIFFS'**
15 | Plaintiffs, | **CERTIFICATION OF**
**INTERESTED ENTITIES OR**
16 | v. | **PERSONS PURSUANT TO**
**CIVIL LOCAL RULE 3-16**
17
DREYER'S GRAND ICE CREAM, INC.,
18
Defendant.
19

20

21 | **TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**
22
**CERTIFICATION**
23
Pursuant to Civil L. R. 3-16, the undersigned counsel of record for Plaintiffs certifies that the
24
following listed persons, associations of persons, firms, partnerships, corporations (including parent
25
corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a
26
party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that
27
could be substantially affected by the outcome of this proceeding:
28
1. PAMELA RUTLEDGE-MUHS (Plaintiff);

2. JAY WOOLWINE (Plaintiff);

3. DREYER'S GRAND ICE CREAM, INC. (Defendant);

4. DREYER'S GRAND ICE CREAM HOLDINGS, INC. (Defendant Dreyer's Grand Ice Cream, Inc. is a wholly-owned corporate subsidiary of Dreyer's Grand Ice Cream Holdings, Inc.);

5. NESTLÉ HOLDINGS, INC. (Dreyer's Grand Ice Cream Holdings, Inc. is ultimately a wholly owned corporate subsidiary of Nestlé Holdings, Inc.); and

6. NESTLÉ S.A. (Nestlé Holdings, Inc. is a wholly owned corporate subsidiary of Nestlé S.A.).

DATED: June 24, 2011                    By: _____

Attorney of Record
Daniel R. Tamez, Esq. ((Bar No. 216619)
GNAU & TAMEZ LAW GROUP, LLP
1010 Second Avenue, Suite 1750
San Diego, CA 92101
danieltamez@sdinjuryattorney.com
Tel: 619-446-6736
Fax: 619-793-5215

Attorney for Plaintiffs and the Class